**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| EMOJI COMPANY GmbH, | ) |
| | ) Case No. 22-CV-2378 |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Judge John J. Tharp, Jr. |
| | ) |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO, | ) |
| Defendants. | ) |

**DECLARATION OF LIN LIN IN SUPPORT OF
WINLYN'S MOTION TO DISSOLVE THE
<u>PRELIMINARY INJUNCTION AND/OR LIFT THE ASSET FREEZE</u>**

1. My name is Mr. Lin Lin. I am a citizen and resident of China, and I am the Operating Manager of Shantou City Zhuoxiang Trading Co., Ltd.[1], ("the Company" or "Winlyn"). The Company was founded in March, 2017 and is physically located in Shantou City, Guangdong Province, China. I am in charge of the Company's Amazon operations.

2. I am over eighteen years of age and competent to testify in court.

3. I make this declaration in support of Winlyn's Motion to Dissolve the Preliminary Injunction entered against it in this litigation. The statements of this declaration are based upon my personal knowledge unless otherwise noted. I could and would testify to the contents of this declaration under oath if called upon to do so.

4. Shantou City Zhuoxiang Trading Co., Ltd. has 95 employees, and is a specialized manufacturer and retailer of products including home decoration supplies, party supplies, toys, and crafts. The Company typically: (1) designs its own products, then (2) contracts with suitable OEM manufacturers for parts as needed, and (3) assembles the products in its own warehouse.

5. The Company owns the US trademark WINLYN (Reg. No. 5726831), which I understand we first used in commerce in April of 2017, and which was registered on the Principal Register of the U.S. Patent and Trademark Office in April 2019. (*See* Exhibit 1.) The Company has also registered the WINLYN mark in China and Germany. (*See* Exhibits 2-3.) The Company sells its products to customers in the United States, Germany, and Canada. I understand that the Company's annual sales revenue from WINLYN products totals about $16,000,000.

---

[1] The Company's name in Chinese is "Shantou Zhuoxiang Maoyi Youxian Gongsi."

6. The Company owns a store on Amazon.com (Store ID ARM5JG1QBG2C7) named the Winlyn Storefront (the "Store"), which has been operating since April 2017. I run the Store. The Store sells hundreds of products under the Company's WINLYN brand, including (for example) products in the following categories: greenery, succulents, potted plants, potted succulents, patriotic-themed products, envelopes, flowers, fabric & ribbon, artificial garlands, artificial fruits, greeting cards, toys & games, artificial flowers, arts & crafts, planters & vases, automotive parts, seasonal decorations, party decorations, floral accessories, and office products. (*See, e.g.*, https://www.amazon.com/stores/Winlyn/Winlyn/page/1C529DBD-55B6-4A79-8476-A73B5F76DBD1 (Winlyn's Amazon Store, last visited June 13, 2022.) The number of products available through the Store varies depending on the season; about half of the Store's 1400+ total products are seasonal. As of June 5, 2022, the Store offered 629 different products for sale.

7. One product the Company has sold through the Store is a pack of adhesive foam stickers having tiny smiley faces, or emoji designs, which was listed on its Amazon product page as the "Winlyn 321 Pcs Assorted Valentine's Day Stickers Embellishments Craft Smile Face Heart Shaped Cutouts Foam Stickers Emoji Round Foam Stickers Self-Adhesive for Kids Scrapbooking Cards Decoration" (The "Winlyn Stickers"). The Company's WINLYN mark is the first word in the product description, identifying the stickers as Winlyn products.

8. I understand that the Plaintiff claims to own trademarks on the word "emoji" and has argued that the Company's description and sale of the pack of emoji stickers infringes its trademark rights. My understanding is that the word "emoji" is a well-known term that has been used for many years and generically describes small digital images or icons — often tiny smiley faces — used in electronic communication to express an idea or an emotion, etc. The Store used the word "emoji" in its product listing for the Winlyn Stickers simply because they literally show

2

emoji designs - tiny smiley faces. As shown above, the Store also listed the product with the Company's own registered US trademark at the beginning of the product title. I do not understand how anyone could confuse the "Winlyn Stickers" with any of Plaintiff's products (whatever those products might be). The use of "emoji" was not meant to confuse or trick anyone; it just describes the designs of those particular stickers. I do not know how to describe a sticker showing an emoji without using the word "emoji."

9. On May 13, 2022, Amazon notified the Store that it had de-listed (removed) the product page for the "Winlyn 321 Pcs Assorted Valentine's Day Stickers" from the Amazon Marketplace. I received that notification by email through the email address for the Store that I had registered with Amazon.

10. On the same day, I received a notice from Amazon that it had also frozen the Store's operating account, which receives the revenue from the Store's Amazon sales (the "Operating Capital").

11. The Operating Capital is like a business bank account for the Store, it receives the revenue from sales of all products the Store sells -- not just sales of the accused Winlyn Stickers. The Company uses the Operating Capital to pay the Store's operating expenses, such as the storage costs for products the Company has shipped to Amazon's warehouse. Amazon requires the Store to maintain a minimum balance, but the Company routinely withdrew Operating Capital to manage its cash flow and the Company's daily operations had relied on that cash flow.

12. The Company has never been accused of intellectual property infringement on Amazon before this case. Neither the Company nor I have ever been involved in litigation in the United States before this case. The Company has no offices or employees anywhere in the United States. It took some time to identify and hire suitable U.S. counsel.

13. Once I secured U.S. counsel for the Company, I became aware that the Complaint (as I understand it) accuses the Company of being a counterfeiter and suggests the Company is part of a network of counterfeiters. That accusation is not true and — as far as I know — the Plaintiff has presented no actual evidence to support that claim about the Company. Instead, the Plaintiff has accused the Company of counterfeiting just because it used the word "emoji" when describing a pack of stickers showing images of emojis.

14. The Company is not part of any counterfeiting operation. The Company is not working with anyone to counterfeit Plaintiff's products and sell them through the Store. Before this lawsuit, neither I nor the Company had ever even heard of the Plaintiff (Emoji Company GmbH). The Company is an honest, independent business that happens to be located in China. It has no business relationship with any other online seller and is not a counterfeiter.

15. Because the Store has continued operating since Amazon froze its account, by June 5, 2022, the frozen account contained approximately $516,273. That amount has grown since June 5 and will continue to grow as long as the Store keeps operating. Amazon's decision to freeze the account due to this case makes all of the Operating Capital inaccessible to the Store and has cut off the Company's usual cash flow.

16. According to the Store's records I have reviewed, the Store had sold 1,019 units the Winlyn Stickers into the United States through May 13, 2022, for total gross sales of $13,804. The Store has not sold any of the Winlyn Stickers since Amazon delisted the product.

17. As discussed above, the Store sells hundreds of products, and the Store's sales revenue from the Winlyn Stickers constitutes an extremely small fraction of the Store's Amazon sales revenue to this point in 2022 (we estimate that fraction to be between .07% and .14%).

18. However, because of this case, all of the sales revenue the Store has earned since May 13, 2022 (and some from before May 13th) — much more money than the total sales of the Winlyn Stickers — remains unavailable to the Store while it continues to incur operating costs. For this reason, the restraint on the Operating Capital has caused and continues to cause significant hardship to the Store and to the Company.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.

Date: June 13, 2022

_Lin Lin_
Lin Lin