IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EMOJI COMPANY GmbH, | ) |
| Plaintiff, | ) Case No. 22-cv-2378 |
| | ) Judge John J. Tharp, Jr. |
| v. | ) |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO, | ) |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANT NO. 232 "WINLYN"'S MOTION TO DISSOLVE THE PRELIMINARY INJUNCTION AND/OR LIFT THE ASSET FREEZE**

Plaintiff submits this Response to Defendant No. 232 "Winlyn"'s (hereinafter "Defendant") Motion to Dissolve the Preliminary Injunction and/or Lift the Asset Freeze and in support states:

I. INTRODUCTION

Defendant has been accused of infringing Plaintiff's EMOJI Trademarks (the "Counterfeit EMOJI Products") through its interactive commercial Internet website on the Amazon.com, Inc. ("Amazon") e-commerce platform. Plaintiff has satisfied the necessary elements for entry of a Preliminary Injunction and the Defendant fails to demonstrate any circumstances that would necessitate vacating of the Preliminary Injunction which was properly entered on June 6, 2022. [Dkt. No. 47]. Defendant's arguments regarding the asset restraint are rendered moot in light of an agreement in principle by the parties to enter into an Agreed Asset Restraint Order to reduce the amount of the asset freeze for this Defendant to $25,000.

## II. STATEMENT OF FACTS

On May 6, 2022, Plaintiff filed a Complaint against Defendant alleging federal trademark infringement and counterfeiting (Count I), false designation of origin (Count II) and violation of the Illinois Uniform Deceptive Trade Practices Act (Count III).

On May 10, 2022, the Court granted Plaintiff's Motion for a Temporary Restraining Order ("the TRO"). [Dkt. Nos. 24, 25]. The TRO authorized Plaintiff to provide notice of these proceedings and the preliminary injunction hearing to Defendants by electronically publishing a link to the Complaint, the TRO and other relevant documents on a website to which the Defendants' Domain Names which are transferred to Plaintiff's control redirect, or by sending an email to Defendants by including a link to said website. TRO at ¶ 7. Since and pursuant to entry of the TRO, Defendant's Amazon.com, Inc. ("Amazon") account has been frozen.

Plaintiff filed a Motion for Entry of a Preliminary Injunction Order and Supporting Memorandum on June 2, 2022. [Dkt. Nos. 40, 41]. Plaintiff served Defendants with a copy of the Summons, Complaint, TRO, Motion for Entry of a Preliminary Injunction Order and Supporting Memorandum on June 2, 2022. [Dkt. No. 44]. This Court granted Plaintiff's Motion for Entry of a Preliminary Injunction Order on June 6, 2022. [Dkt. Nos. 46, 47].

Defendant filed a Motion to Dissolve the Preliminary Injunction and/or Lift the Asset Restraint on June 13, 2022. [Dkt. Nos. 58, 59]. On June 14, 2022, this Court set this a briefing schedule on Defendant's Motion whereby Plaintiff's Response is due on June 24, 2022 and Defendant's Reply is due on July 1, 2022. [Dkt. No. 61].

## III. STATUTORY AUTHORITY

A party seeking to obtain a preliminary injunction must demonstrate that: (1) its case has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) it will

suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms needs favor the plaintiff's position. *Id*. The sliding scale approach is not mathematical in nature, rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.* at 895-896. The greater the movant's likelihood of succeeding on the merits, the less the balancing of harms needs be in his favor. *See Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 461 (7th Cir. 2000).

### IV. ARGUMENT

#### a. Plaintiff has Met the Standards for a Preliminary Injunction

Defendant's Motion should be denied because the Preliminary Injunction was properly granted and to prevent further unlawful conduct by Defendant. The registrations for the EMOJI Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the EMOJI Trademarks pursuant to 15 U.S.C. § 1057(b). The EMOJI Trademarks qualify as

3

famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and have been continuously used and never abandoned. Santiago Declaration at ¶ 7. Defendant's use of Plaintiff's trademarks to sell Counterfeit EMOJI Products is causing consumer confusion and should be prohibited.

      **b. Plaintiff Will Likely Succeed on the Merits**

           i.      **Plaintiff Will Likely Succeed on Its Trademark Infringement Claim**

Defendant's Motion should be denied because Plaintiff is likely to succeed on its trademark infringement claim. A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, uses in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use[s] is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). To prove a *prima facie* case of infringement, a plaintiff must show: (1) its mark is distinctive enough to be worthy of protection; (2) Defendants are not authorized to use the trademark; and (3) Defendant's use of the trademark causes a likelihood of confusion as to the origin or sponsorship of Defendant's products. *See Neopost Industrie B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005). Plaintiff satisfies all three requirements of the Lanham Act to successfully bring a trademark infringement and counterfeiting claim.

Regarding the first two elements, Plaintiff's EMOJI Trademarks are inherently distinctive and are registered with the United States Patent and Trademark Office on the Principal Register. Plaintiff is the owner of Trademark Registration Nos. 4,868,832; 5,202,078 and 5,415,510 for the EMOJI marks. Plaintiff's trademarks are registered on the Principal Register and, under Section 7(b) of the Lanham Act, those registrations constitute prima facie evidence of: (a) the validity of the registered mark and of the registration; (b) the registrant's ownership of the mark and (c)

the registrant's exclusive right to use the mark in commerce with regard to the goods concerned pursuant to 15 U.S.C. § 1057(b). The EMOJI Trademarks have been continuously used. Santiago Declaration [Dkt. No. 11, Attachment 1 ¶¶ 5-7]. Furthermore, Plaintiff has not licensed or authorized Defendant to use the EMOJI Trademarks, nor is Defendant an authorized retailer of genuine EMOJI Products. Reiter Declaration [Dkt. No. 11, Attachment 3 ¶ 4].

With regard to the third factor, the Seventh Circuit has enumerated seven factors to determine whether there is a likelihood of confusion: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and (7) intent of the defendants to palm off their products as that of another. *Eli Lilly*, 233 F.3d at 461-462.

In this case, Plaintiff satisfies the likelihood of confusion test. Defendant has attempted to sell Counterfeit EMOJI Products. As such, the first and second likelihood of confusion factors weigh heavily in favor of Plaintiff.

Plaintiff also satisfies the third factor, the area and manner of concurrent use. Here, both parties promote the sale of the same products using the EMOJI Trademarks to the same consumers. *See* Exhibit 1 to the Santiago Declaration [Dkt. No. 11]. Therefore, this factor also weighs in favor of Plaintiff.

Regarding the fourth factor, degree of consumer care, potential consumers purchasing EMOJI Products are not restricted to a certain specialized, sophisticated group of people. Rather, the consumer base is a diverse group of people. "[W]hen a buyer class is mixed, the standard of care to be exercised by the reasonably prudent purchaser will be equal to that of the least sophisticated consumer in the class." *Trans Union LLC v. Credit Research, Inc.,* 142 F. Supp. 2d

5

1029, 1043 (N.D. Ill. 2001). As such, EMOJI brand consumers are very likely to be confused, so this factor favors Plaintiff.

Due to their long-standing use and wide acceptance by the public, the EMOJI Trademarks are distinctive and signify to consumers that the products come from and/or sponsored by Plaintiff, and the EMOJI name serves as an indicator of the product's origin. The EMOJI COMPANY GmbH owns about 1,000 trademark registrations and applications worldwide for the EMOJI mark, as a word mark and in conjunction with other words or design elements. *See* https://www.emoji.com The mark has been examined hundreds of times by relevant Trademark Offices worldwide; and, in each country, the "EMOJI" Trademarks have been found to be distinctive and registrable in connection with the relevant goods.

Plaintiff has been licensing its EMOJI Trademark through an international network of agents and dealers in the U.S. and more than 130 other countries for years. Companies including Sony Pictures Animation Inc. ("SPA") ("The Emoji Movie"), Walmart, Costco, Nestle, Pepsico, Burger King, Nikon, Fuji, Random House, Aldi, Ferrero, Unilever, Zara, Danone, Chevrolet, The Hershey Company, and Kellogg's, among others, have entered into license agreements with Plaintiff concerning use of the EMOJI Trademark. *Id*. This network of licensed users has resulted in retail sales of EMOJI branded products exceeding $800 million annually. *Id*. EMOJI COMPANY GmbH is the official source of EMOJI branded products.

According to the USPTO Trademark Manual of Examining Procedure, "The degree of distinctiveness – or, on the other hand, descriptiveness – of a designation can be determined only by considering it in relation to the specific goods or services. *Remington Products, Inc. v. N. Am. Philips Corp.*, 892 F.2d 1576, 1580 (Fed. Cir. 1990) (the mark must be considered in

context, i.e., in connection with the goods)." TMEP Section 1209.01. The EMOJI Trademark is not descriptive when used in connection with products including shirts, phone cases, slippers, pillows and plush toys. A "descriptive" term is one that directly and immediately conveys some information concerning the characteristics of the product. The word "emoji" has been defined by the Oxford Dictionary as "a small digital image or icon used to express an idea, emotion, etc., in electronic communication". In this instance, any potential descriptive use of the word "Emoji" would only relate to particular digital icons used in electronic communications. The word/mark "Emoji" itself is not descriptive of any goods or products covered by any trademark registration involved in this case.

      Thus, the fifth factor, the strength of the marks, also weighs heavily in favor of Plaintiff.

      As for the sixth factor, Plaintiff does not need to prove likelihood of confusion with evidence of actual confusion; instead, it merely needs to show *some* evidence of potential confusion. *See Libman Co. v. Vining Indus., Inc.*, 69 F.3d 1360, 1363 (7th Cir.1995); *see also Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 960 (7th Cir. 1992) (the Seventh Circuit has consistently found that "plaintiff need not show actual confusion in order to establish likelihood of confusion."). In this case, actual confusion can be inferred because Defendant is selling counterfeit EMOJI Products in connection with the EMOJI Trademarks.

      In its Motion, Defendant claims that use the word "emoji" was fair use and merely descriptive. As shown in Exhibit A, which is a copy of the infringing listing, Defendant uses Plaintiff's registered name/mark "Emoji" instead of "emoji" to describe its products and to give the consumer the impression that these products were sponsored or endorsed by the Emoji Company GmbH. Defendant could have easily described the referenced products in many different ways, but chose to use the word "Emoji" to drive sales to its website, which has sold

7

many "Emoji" branded products. Defendant sold 1,019 products for a gross value of $14,764.36. *See* Exhibit B, Declaration of L. Figueroa. Because the goods are similar and have identical and similar uses, consumers will be confused and think that Defendant's products are genuine EMOJI Products or are sponsored or endorsed by Plaintiff. This factor weighs in favor of Plaintiff.

Regarding the seventh and final factor, Defendant is intentionally using the EMOJI Trademarks to confuse and deceive the consuming public into thinking that Defendant's Counterfeit EMOJI Products are manufactured by or emanate from Plaintiff. Defendant is purposefully attempting to benefit and trade off Plaintiff's goodwill and reputation. Therefore, the final factor regarding Defendant's intent also weighs heavily in Plaintiff's favor.

In sum, each of the seven likelihood of confusion factors weighs heavily in favor of Plaintiff, and, therefore, Plaintiff has established that it has a reasonable likelihood of success on the merits for its trademark infringement and counterfeiting claim.

### c. There Is No Adequate Remedy at Law and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir. 2000)); *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.,* 128 F.3d 1111, 1114 (7th Cir. 1997); *Wesley–Jessen Division of Schering Corp. v. Bausch & Lomb Inc.*, 698 F.2d 862, 867 (7th Cir.1983). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977). "The most corrosive and irreparable harm

attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988); *see also 4 Callmann on Unfair Competition, Trademark and Monopolies* § 88.3(b) at 205 (3d ed. 1970). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

The harms caused by the sale of counterfeit products is equally damaging by depriving Plaintiff of the ability to control the quality of its brand by associating it with inferior quality goods. Santiago Decl. ¶ 12. These are recognized irreparable harms for which monetary compensation is inadequate. *See MGM Studios, Inc. v. Grokster, Ltd.,* 518 F.Supp. 2d 1197, 1219 (C.D. Cal. 2007).

Defendant's unauthorized use of the Emoji Trademarks has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. Santiago Declaration [Dkt. No. 11, Attachment 1, ¶¶ 10-12].

The extent of the harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendant's infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (Finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law); *Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis,* 35 F.3d 1134, 1140 (7th Cir. 1994) ("[S]howing injury to goodwill can constitute irreparable harm that is not

9

compensable by an award of money damages."). Plaintiff will suffer immediate and irreparable injury, loss, or damage if the Preliminary Injunction is vacated.

### d. The Balancing of Harms Tips in Plaintiff's Favor

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895.

"When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C. 1996).

Thus, the balance of equities tips decisively in Plaintiff's favor and equity requires that Defendant be ordered to cease their unlawful conduct.

### e. Issuance of the Injunction Is in the Public Interest

An injunction in these circumstances is in the public interest because it will prevent consumer confusion and stop Defendant from violating federal trademark law. The public is currently under the false impression that Defendant is selling products through their Internet Store with Plaintiff's approval and endorsement. An injunction serves the public interest in this

case "because enforcement of the trademark laws prevents consumer confusion." *Eli Lilly*, 233 F.3d at 469.

Federal courts have long held that "the trademark laws ... are concerned not alone with the protection of a property right existing in an individual, but also with the protection of the public from fraud and deceit." *Stahly, Inc. v. M.H. Jacobs Co.,* 183 F.2d 914, 917 (7th Cir. 1950). The public interest is further served by protecting "the synonymous right of a trademark owner to control his product's reputation." *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976).

In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendant's actions. The public has the right not to be confused and defrauded as to the source of the goods and services offered by Defendant, or as to the identity of the owner of trademarks used in connection with those goods. Unless Defendant's unauthorized use of the EMOJI Trademarks is enjoined, the public will continue to be confused and misled by Defendant's conduct.

Furthermore, the injunction should remain in place until the Court has properly adjudicated Plaintiff's claims. However, the parties' have reached an agreement in principle to enter into an Agreed Asset Restraint Order to reduce the amount of the asset freeze for this Defendant to $25,000.

For these reasons, the public interest is best served by denying Defendant's Motion to vacate the Preliminary Injunction.

## V. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court deny Defendant's Motion.

Respectfully submitted,

Dated: June 24, 2022

By: s/Michael A. Hierl
Michael A. Hierl (Bar No. 3128021)
William B. Kalbac (Bar No. 6301771)
Hughes Socol Piers Resnick & Dym, Ltd.
Three First National Plaza
70 W. Madison Street, Suite 4000
Chicago, Illinois 60602
(312) 580-0100 Telephone
mhierl@hsplegal.com
wkalbac@hsplegal.com
Attorneys for Plaintiff
EMOJI COMPANY GmbH

## CERTIFICATE OF SERVICE

      The undersigned attorney hereby certifies that a true and correct copy of the foregoing Response was electronically filed with the Clerk of the Court and served on all counsel of record and interested parties via the CM/ECF system on June 24, 2022.
.

<u>/s/ *Michael A. Hierl*</u>