IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EMOJI COMPANY GmbH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 22-cv-2378 |
| | ) | |
| THE INDIVIDUALS, CORPORATIONS, | ) | Judge John J. Tharp, Jr. |
| LIMITED LIABILITY COMPANIES, | ) | |
| PARTNERSHIPS, and | ) | |
| UNINCORPORATED ASSOCIATIONS | ) | |
| IDENTIFIED ON SCHEDULE A HERETO, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

For the reasons set forth in the Statement below, defendant Winlyn's motion to dissolve the preliminary injunction and/or lift asset restraint [58] is granted. Winlyn is no longer enjoined from engaging in any of the conduct proscribed by the Court's prior order [47], and all restraints on third-party conduct set forth in that order are lifted insofar as they relate to Emoji Company's claims against Winlyn specifically. Winlyn is required to answer the complaint on or before 10/23/23 and the parties are directed to file a joint status report containing a proposed case management schedule, including any disputes between the parties as to the proposed schedule by that date as well.

**STATEMENT**

The Court previously granted plaintiff Emoji Company GmbH's motion for entry of a preliminary injunction against the against the fully interactive, e-commerce stores operating under the seller aliases identified in Schedule A (ECF No. 7) to the complaint. ECF No. 47. Following the entry of the PI order, one of those defendants, Winlyn (def. no. 232), appeared through counsel and filed a motion challenging the propriety of the preliminary injunction and asset restraint order against it. *See* ECF Nos. 49, 58. The Court construes Winlyn's motion to dissolve the PI and/or lift the asset freeze as a motion to reconsider its ruling (as to Winlyn only).[1]

Winlyn contends that Emoji Company should not be entitled to continued preliminary injunctive relief because it failed to meet its burden on the required elements for equitable relief.

---

[1] Winlyn is the sole remaining defendant in this case. All other defendants have either been voluntarily dismissed or had a final default judgment entered against them. Winlyn, defendant no. 232 of the schedule A, does not appear to have answered the complaint, but it was not included in Emoji's motion for default judgment, ECF No. 95. Accordingly, Winlyn is directed to respond to the complaint by October 23, 2023.

Awarding preliminary injunctive relief before the merits of a case have been decided "is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). As the party seeking the preliminary injunction, Emoji Company bore the burden of showing that it was warranted. It had to show that it had a likelihood of succeeding on the merits, was likely to suffer irreparable harm in the absence of preliminary relief, the balance of equities tipped in its favor, and the requested relief was in the public interest. *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020), *as amended on denial of reh'g and reh'g en banc* (Sept. 4, 2020); *Mays v. Dart*, 974 F.3d 810, 818-22 (7th Cir. 2020). The Court previously found that Emoji Company satisfied its burden, largely due to the absence of any adversarial presentation. But now, based on Winlyn's motion, the Court finds that Emoji Company is not entitled to continuing preliminary injunctive relief against Winlyn.

I.     **Alleged Infringement**

Emoji Company claims that Winlyn is liable for trademark infringement and counterfeiting. The alleged infringement is based on Winlyn's use of the word "Emoji," for which the Emoji Company has registered trademarks in several classes (the "Emoji Marks"), in the product name for a set of assorted Valentine's Day stickers it sells on Amazon.com.[2] An excerpt from the Amazon webpage is reproduced below:



Excerpt from Ex. 1 to The Emoji Company's Resp. to Mot. to Dissolve, ECF No. 69-1.

---

[2] The Emoji Company has not licensed or otherwise authorized Winlyn to use the Emoji Trademarks.

To be clear, Emoji Company makes no claim to any right over the actual images or icons featured on the stickers, only the mark "emoji" with respect to numerous classes of goods, including stickers. *See* Trademark Reg. No. 4,868,832, Ex. 1 to Compl., ECF No. 1-1.

## II. Reasonable Likelihood of Success on the Merits

The Seventh Circuit has explained that an applicant for a preliminary injunction must make a "strong" showing of success—that's something less than proof by a preponderance, but it "normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). To succeed on the merits of its claim under either federal or state law, then, Emoji Company "must establish that (1) its mark is protectable and (2) the defendant's use of the mark is likely to cause confusion among consumers." *SportFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 595 (7th Cir. 2019) (quoting *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 672 (7th Cir. 2001)). Emoji Company's likelihood of success must also be assessed in light of any merits defenses Winlyn may raise.

Winlyn's motion to reconsider argues that Emoji Company has failed to demonstrate a likelihood of success on the merits of its claims because (1) the Emoji Marks are not protectable because they have become generic, (2) Winlyn has a strong statutory "fair use" defense," and (3) Emoji Company has not established that Winlyn's use of "Emoji" in its product name is likely to confuse consumers about the origin of the product. The Court will review each of these arguments in turn.[3]

### A. Lack of Protectability due to Generic Nature

Winlyn argues that the Emoji Mark is generic and therefore not protectable. "A generic term is one that is commonly used as the name of a kind of goods." *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936 (7th Cir. 1986). "[G]eneric terms receive no trademark protection . . . ." *Mil-Mar Shoe Co., Inc. v. Shonac Corp.*, 75 F.3d 1153, 1156 (7th Cir. 1996). "A descriptive term, by contrast, is one that names a characteristic of a particular product or service." *H-D Michigan, Inc. v. Top Quality Serv., Inc.*, 496 F.3d 755, 759 (7th Cir. 2007) (citing J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 11:16 (4th ed. 2007)). "For example, if an apple-seller names its company 'APPLE,' its name is generic. If an apple-seller names its product 'TASTY,' its name is descriptive." *Id.* at n.2 (internal citation omitted). Like generic terms, "descriptive marks ordinarily cannot function as trademark, but a descriptive mark may warrant protection if it has acquired a secondary meaning. A descriptive mark acquires secondary meaning if the product name comes 'to be uniquely associated with the original seller.'" *Id.* at 759-60 (quoting *Custom Vehicles, Inc. v. Forest River, Inc.*, 476 F.3d 481, 483 (7th Cir. 2007)) (internal citation omitted).

Winlyn supports its argument with strong evidence that the term "emoji" is now a generic word for the wide variety of digital pictograms and icons that can be embedded in electronic textual communication. It cites, among other things, the fact that "emoji" has multiple dictionary and

---

[3] The parties also dispute the other preliminary injunction elements, but since the Court ultimately finds that Emoji Company is not reasonably likely to succeed on the merits of its claims, it is not necessary for the Court to reach those other elements.

encyclopedic definitions, which tends to be a useful indicator of generic status. *See* Winlyn Memo. at 7-8. Merriam-Webster, for instance, defines the word as "any of various small images, symbols, or icons used in text fields in electronic communication (as in text messages, email, and social media) to express the emotional attitude of the writer, convey information succinctly, communicate a message playfully without using words, etc." *emoji*, Merriam-Webster.com Dictionary, https://www. merriam-webster.com/dictionary/emoji. At least one other court in this District has taken note of "the ubiquity of the word 'emoji' as a reference to the various images and icons used in electronic communications." *The Emoji Company GmbH v. Individuals Identified on Sched. A Hereto*, 20-CV-04678, 2022 WL 4465593, *6 (N.D. Ill. Sept. 26, 2022).

But those facts do not strip Emoji Company of trademark protection for the term "emoji" on classes of products ***other than*** digital icons, such as, as relevant here, stickers. That's because "emoji" is not a generic term for stickers or emoji-themed stickers. *See* McCarthy, *supra* at 12:1 (stating that when a name is generic, "the name of the product answers the question 'What are you?'"); *see also H.D. Michigan, Inc.*, 496 F.3d at 760 ("A company's name may be generic as to one of its products, but not generic as to its other products, even those related to the first product. Two Second Circuit decisions illustrate this principle. In one, the court . . . held that the word 'safari' is generic as applied to a type of khaki hat and jacket, but not generic as applied to boots, shoes, shirts, ice chests, and tobacco. *See Abercrombie & Fitch Co. v. Hunting World Inc.*, 537 F.2d 4, 11-12 (2d Cir. 1976). In another, the court held that the word 'self-realization' is a generic name for a yoga organization (people performing yoga attempt to attain self-realization), but descriptive as applied to yoga books and classes. *See Self–Realization Fellowship Church v. Ananda Church of Self–Realization*, 59 F.3d 902, 909-10 (9th Cir. 1995)."). Thus, Winlyn has not shown that Emoji Company has a less-than-likely shot at success on the merits on the basis that its mark is generic and therefore unprotectable.

That said, while Winlyn does not explicitly make the argument that The Emoji Company's "emoji" mark is not protectable because it is a merely descriptive term that has not developed a secondary meaning, Winlyn does hint at it. *See* Memo. at 6 ("Plaintiff has made no showing that the use of 'emoji' indicates that it (Emoji Company GmbH) is the source of the goods in question, or the term or the iconic emojis themselves."); *id.* at 10 ("Again, common sense indicates that consumers likely know what an 'emoji' is but are unlikely to have heard of the Plaintiff. . . . Even if the Court does not rule that 'emoji' is generic, the term is at most descriptive as applied to Winlyn's accused emoji stickers and thus not protectable when used in that context. *See, e.g., G. Heileman Brewing Co. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 1001 (7th Cir. 1989) (affirming decision that the trademark 'LA' (for low alcohol beer) was 'merely descriptive' and not protectible)."). The availability of this potential argument once the merits are reached slightly diminishes Emoji Company's likelihood of success on the merits.[4]

---

[4] In a case before another judge in this District that involved Emoji Company as plaintiff, the court, in deciding on a motion for entry of default judgment, questioned whether Emoji Company can actually offer certain evidence of brand value, which would also support a finding that the term "emoji" has developed any secondary meaning associated with the company itself. *See Emoji Company GmbH*, 2022 WL 4465593, at *6 ("Other than its say-so, Plaintiff offers no

B.  **Winlyn's Fair Use Defense**

Winlyn also invokes the "fair use" defense against trademark infringement. The Seventh Circuit has explained that:

> [T]he Lanham Act provides several affirmative defenses to a plaintiff's claims, including the "fair use" defense. *See* 15 U.S.C. § 1115(b). The fair use defense is available against even incontestable trademarks . . . . The defense allows individuals to use otherwise trademarked language in a descriptive sense. A defendant in a trademark infringement action may invoke the fair use defense by demonstrating that the alleged infringement, 'is a use, otherwise than as a mark which is descriptive of and used fairly and in good faith only to describe the goods or services of such party. In short, to raise the fair use defense successfully, [a defendant] must show that (1) it did not use [the trademarked language] as a trademark, (2) the use is descriptive of its goods, and (3) it used the mark fairly and in good faith.

*Sportfuel, Inc.*, 932 F.3d at 595 (cleaned up). It "is based on the principle that no one should be able to appropriate descriptive language through trademark registration." *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 639 (7th Cir. 2001).

As for the first element, "[a] word or phrase functions as a trademark when it is used by a source of a product to identify itself to the public as the source of its product and to create in the public consciousness an awareness of the uniqueness of the source and of its products." *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 953 (7th Cir. 1992). Otherwise, a defendant's use of trademarked language is descriptive when it "specifically describes a characteristic or ingredient of the goods." *Miller Brewing Co. v. G. Heileman Brewing Co.*, Inc., 561 F.2d 75, 79 (7th Cir. 1977). "Whether or not a term is descriptive depends not only on the term itself, but also on the product for which it serves as a source indicator." *Sorensen v. WD-40 Co.*, 792 F.3d 712, 725 (7th Cir. 2015).

The notion that Winlyn has used the word "emoji" on its Amazon page to indicate the source of the goods, rather than to describe the stickers it is selling, is incredibly strained. Winlyn can quite easily show that it used "Emoji" to describe its Valentine's Day stickers product because the stickers depict an assortment of love-themed and heart-shaped emojis. As Winlyn aptly summarizes:

> Winlyn's use of "emoji" was simply a reference to the commonly-used word which described the accused stickers with tiny smiley faces. Winlyn's prominent use of its own brand and trademark ("Winlyn") in the product name also shows its good faith. The word

---

evidence demonstrating, for instance, that consumers actually associate Plaintiff with emoji products such as those offered for sale by Defendants.").

> "emoji" was only one minor part of the product description. Plaintiff is not entitled to bar all uses of the word "emoji."

Memo. at 10.[5] The word "Emoji" helpfully describes the stickers that Winlyn is selling. Despite Emoji Company's apparent confidence in the strength of its brand, the reality is that consumers looking to buy emoji-themed stickers are likely to search for the word "emoji." This is not because they seek any Emoji-Company-branded products (licensed or otherwise). Rather, it is simply because that is the best way to describe stickers using the iconic pictogram styles. Moreover, Winlyn's use of the word "Emoji" is buried in the middle of its 26-word-long product name, among other words that would obviously be used as descriptors (*e.g.*, "Round," "Heart Shaped," "Foam Stickers," "Self-Adhesive," "Smile Face."). Winlyn even includes its brand name at the beginning of the title, which, though not dispositive, certainly helps its case.

Given the obviously descriptive purpose of Winlyn's use of the "Emoji" language, and Winlyn's contention that it was not even aware of the Emoji Company's existence let alone its registration of the trademark at issue, the Court finds that Winlyn will most likely be able to show that its use of the mark was fair and in good faith, the final element of its fair use defense. *See Sorensen*, 792 F.3d at 725 ("A failure to investigate [*i.e.*, conduct a trademark search] can, in some circumstances, support an inference of bad faith. In this case, however, this fact cannot help [plaintiff] survive summary judgment. First, if [defendant] believed—correctly, as we have concluded—that it was not using the [trademarked word] as a trademark, it had no reason to conduct a trademark search.").

### C. Likelihood of Confusion

The issue of whether a defendant is fairly using a trademark—an affirmative defense—is related to whether its use of the trademarked language is likely to confuse consumers—an element of an infringement claim. *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 955, n.7 (7th Cir. 1992) (citing McCarthy, *supra* at § 11:17 (noting "some confusion in the case law as to whether 'fair use' is really a distinct and separate 'defense' or whether it is merely one manner of use which is not likely to confuse customers," and arguing that "'fair use' should be viewed as merely one type of use which is not likely to cause confusion.")). If a defendant is not using the trademarked language as a source indicator (*i.e.*, as a trademark), then that is a strong indicator that it will not confuse a reasonable consumer. *See AutoZone, Inc. v. Strick*, 543 F.3d 923, 930 (7th Cir. 2008) (In assessing likelihood of confusion, "[t]he court should . . . 'consider whether the customer would believe that the trademark owner sponsored, endorsed or was otherwise affiliated with the product.'" (quoting *Nike, Inc. v. "Just Did It" Enters.*, 6 F.3d 1225, 1228-29 (7th Cir. 1993))). The Court therefore acknowledges that—at least for the purpose of evaluating an applicant for injunctive relief's prospects of succeeding on the merits—a trademark defendant's

---

[5] In response to Winlyn's motion, Emoji Company does not address Winlyn's invocation of the fair use defense, except to note that Winlyn used a capital "E" in "Emoji" instead of a lowercase one. According to Emoji Company, that capitalization means Winlyn is trying to communicate source. Emoji Company advances this argument despite the fact that every other word in Winlyn's product name/description field for its stickers product is also capitalized.

strong showing of fair use is typically associated with a trademark plaintiff's poor showing of likelihood of confusion.

\* \* \*

The Court is therefore satisfied that Winlyn has shown that Emoji Company is unlikely to overcome its fair use defense or to prove likelihood of confusion. As a result, Emoji Company has not established a strong likelihood of success on the merits of its infringement claim. The order issuing a preliminary injunction and asset restraint against Winlyn is therefore vacated.

Dated: September 29, 2023

John J. Tharp, Jr.
United States District Judge